IN RE APPLICATION OF MITCHELL.

[Cite as *In re Application of Mitchell*, 119
Ohio St.3d 38, 2008-Ohio-3236.]

(No. 2008–0521—Submitted May 6, 2008—Decided July 3, 2008.)

---

**Per Curiam.**

{¶ 1} The applicant, Geoffrey Christopher Mitchell, M.D., of Columbus, Ohio, is a candidate for admission to the Ohio bar and has applied to take the Ohio bar examination. The Board of Commissioners on Character and Fitness recommends that we disapprove, for now, his application to take the bar exam, based on findings that he lodged questionable accusations and legal claims after suing for his discharge from practice in a hospital emergency room. We accept the board's recommendation to disapprove but also allow the applicant to apply to take the February 2009 bar examination, providing he first completes a legal ethics and professionalism course at a law school accredited by the American Bar Association ("ABA").

{¶ 2} The applicant is a physician who entered Capital University Law School in 2003 after a long career in medicine. The applicant registered as a candidate for admission to the Ohio bar, and in 2005, the Columbus Bar Association's admissions committee provisionally approved his character, fitness, and moral qualifications in accordance with Gov.Bar R. I(11)(D)(3) and (4). Upon graduation, the applicant applied to take the bar exam that was to be administered in July 2007.

{¶ 3} Before the applicant could qualify to sit for the exam, he had to obtain the admissions committee's final approval pursuant to Gov.Bar R. I(3)(C), including a favorable review of his supplemental character questionnaire and related materials. During this process, a lawyer complained to the committee, alleging that the applicant had lodged false claims against him, his associates, and his clients—a physicians' group under contract to provide hospital emergency-room services, and others—after the clients successfully defended against his tort claims. Following an investigation of these allegations, the admissions committee expressed misgivings about the applicant's judgment by recommending disapproval of his bar application.

{¶ 4} The applicant appealed the admission committee's recommendation, and a three-member panel of the board heard the case in January 2008. See Gov.Bar R. I(12)(C). Finding that the applicant had "embarked on a course of unprofessional and illogical conduct" following the loss of his tort claims by pursuing "repeated, unwarranted attacks" against opposing counsel and others, the panel concluded that the applicant at that time lacked the qualifications to practice law in this state. Because the applicant had "begun to understand that he cannot make serious allegations of misconduct against opposing counsel and parties without evidence to support the allegations," however, the panel recommended that the applicant be permitted to apply for the bar February 2009 bar exam with further ethics instruction. The board adopted the panel's findings and recommendation.

{¶ 5} Since the board filed its report, the parties have waived any objections and jointly asked that we adopt the board's findings of fact, conclusions of law, and recommendation.

## I. Basis for the Panel and Board Decisions

### A. The Underlying Dispute

{¶ 6} The applicant formerly practiced as an attending physician at Riverside Hospital in Columbus, most recently in affiliation with Mid–Ohio Emergency Services, L.L.C. ("MOES"), and before that in affiliation with Olentangy Emergency Physicians. MOES is the physicians' group that became responsible in September 1998 for the hospital's emergency-room services under the oversight

of MedPartners, a large physician-management company. MOES took over at Riverside after Riverside and Grant Medical Center merged and became part of OhioHealth.

{¶ 7} The applicant opposed OhioHealth's decision to have MedPartners oversee emergency-room services at Riverside. During negotiations between OhioHealth and MedPartners, the applicant circulated a memo suggesting that the partnership would not be in the best interest of the emergency-room physicians. OhioHealth and MedPartners ultimately finalized a deal, however, and the applicant continued to work in the emergency room, albeit then as a MOES employee. The relationship did not last long.

{¶ 8} On November 20, 1998, MOES dismissed the applicant for allegedly having disclosed confidential patient information in violation of the hospital's quality-control policies. The applicant viewed his discharge as unjust and as the result of a complaint he had lodged about the poor care that he perceived one emergency-room patient had received. In 1999, the applicant sued MOES, Grant/Riverside, and others for his termination, arguing in the main that defendants had violated public policy by terminating his employment for raising legitimate concerns about patient care.

## B. The MOES Litigation

{¶ 9} In the preliminary stages of the applicant's suit, the Franklin County Court of Common Pleas granted summary judgment in the defendants' favor. In 2004, the Tenth District Court of Appeals affirmed. After the loss on appeal, the applicant's counsel withdrew from the case.

{¶ 10} By the time of the court of appeals' decision, the applicant was in his second year of law school. With the departure of his lawyer, the applicant decided to proceed pro se in the MOES litigation. He moved this court to grant discretionary review of his appeal, which we denied. He then filed a motion under Civ.R. 60(B) asking the trial court to vacate the order granting summary judgment. The motion was overruled. The applicant then began filing motions and discovery requests anew, evidently in response to defendants' motions for sanctions, including asking for leave to file another motion to vacate. The motions for sanctions and to vacate remained pending as of the panel hearing.

## C. The Cause for the Panel and Board Concerns

{¶ 11} The applicant engaged in the conduct that implicated his fitness to practice law while representing himself. He lodged questionable if not baseless claims of impropriety against opposing counsel in the MOES litigation. He also attempted to show a conspiracy by making an untenable connection between his

claims against MOES and the wrongdoing of a former MedPartners chairman who had been indicted on federal charges of bribery.

{¶ 12} In adopting the panel's report, the board described the applicant's lapses in judgment relative to opposing counsel:

{¶ 13} "On repeated occasions in court filings and in correspondence, the Applicant accused opposing counsel of engaging in fraud and other unethical conduct. The Applicant is of the belief that certain information was not disclosed in response to interrogatories and deposition questions his counsel propounded during the MOES Litigation. After reviewing the matters, the Panel cannot conclude that information was intentionally concealed or withheld from the Applicant and his counsel. At best, the defendants and their counsel did not provide certain information to vague and ambiguous questions that the Applicant believes should have been provided. What is more troubling is the manner in which the Applicant chose to address his concerns. When the Applicant became aware of certain information that he believed should have been provided in response to interrogatories and deposition questions, he could have simply contacted opposing counsel to resolve the issue. Instead, the Applicant repeatedly attacked opposing counsel in pleadings and letters sent to various governmental agencies, including a grievance filed against one of the opposing attorneys as well as a letter to the Franklin County Prosecutor. Finally, the Applicant wrote a letter to the managing partner of one of defense counsel's firms. In that letter, the Applicant accused the law firm of engaging in fraudulent and illegal conduct. After reviewing the entire record presented in this matter, the Panel can only conclude that the Applicant's accusations are without merit and the Applicant has displayed incredibly poor judgment in the manner in which he handled his concerns."

{¶ 14} As to the applicant's attempt to tie his discharge case to the misdeeds of the former MedPartner chairman, the board observed:

{¶ 15} "During the course of the MOES Litigation, MedPartners' Chairman, Richard Scrushy ('Scrushy'), was indicted on a range of federal charges stemming from his efforts to bribe the (former) Governor of the State of Alabama. Apparently, Scrushy either paid or attempted to pay the Governor of the State of Alabama to place Scrushy or his designee on a state board that dealt with medical contracts and hospital licensing. The record in this case establishes that Scrushy was clearly a bad actor who committed serious crimes. However, there is no evidence in the record whatsoever that indicates that the wrongdoing of Scrushy and MedPartners extended to MedPartners' dealings with Grant/Riverside and the formation of MOES. Despite this lack of evidence, the Applicant has been steadfast in his attempts to persuade the court in the MOES Litigation and numerous governmental agencies that the merits of his case should be reconsid-

ered in light of the scandal involving Scrushy and MedPartners. The Applicant is convinced that the hiring of [a consultant formerly associated with MedPartners] to negotiate on behalf of Ohio Health while [the consultant] was still receiving compensation from MedPartners amounts to fraud which he has referred to as either a bribe or a kickback. The Applicant's contentions are not supported by any evidence and he does not appear to understand that his mere belief, even if it is genuine, is not sufficient to support his allegations of fraud in the MOES Litigation."

## II. Disposition

{¶ 16} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). Necessarily, "[a] record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Id.

{¶ 17} An applicant's tendency to abuse the legal process is one of the factors upon which we may rely in disapproving his or her qualifications for taking the bar examination. Gov.Bar R. I(11)(D)(3)(j). For this reason, an applicant's dubious judgment in repeatedly filing unwarranted legal claims, among other much more egregious failings, has resulted in our disapproving his application to take the bar. *In re Application of Keita* (1995), 74 Ohio St.3d 46, 47, 656 N.E.2d 620 (applicant's litigious conduct, combined with his significant criminal record, apparently serious and untreated psychological problems, and lack of candor about his past precluded him from ever reapplying for the bar examination). But this applicant's case is not nearly as serious as *In re Application of Keita*—apart from his actions in the MOES litigation, this applicant's credentials and conduct are without reproach.

{¶ 18} Even so, the applicant's unwarranted attacks against opposing counsel and repeated and unfounded contentions in the MOES litigation revealed a singular lack of the good judgment necessary to the practice of law. To his credit, however, the applicant seemed to acknowledge this failing at the panel hearing, and we take his decision not to object to and, in fact, accept the board's report as further evidence of his insight. We thus consider the applicant an acceptable risk for reapplication.

{¶ 19} We accept the board's recommendation to disapprove. The applicant may apply to take the February 2009 bar examination, providing he first

completes a legal ethics and professionalism course at an ABA-accredited law school.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Christensen, Christensen, Donchatz, Kettlewell & Owens, L.L.P., Charles J. Kettlewell, and Kenneth R. Donchatz, for applicant.

Sowald, Sowald & Clouse and Eric Johnson; and Benesch, Friedlander, Coplan & Aronoff and Martha J. Sweterlitsch, for the Columbus Bar Association.